## CYRUS *v.* THE STATE.

1. The killing by a man of his mistress for no cause except that she, within his personal knowledge, had shortly before the homicide been guilty of lewd or lascivious acts with another man, and, upon being upbraided therefor, expressed no regret for her conduct, is murder, and the law of manslaughter has no application whatever to a case of this kind.
2. Following the cases of *Inman* v. *State,* 72 *Ga.* 269, and *Valentine* v. *State,* 77 *Ga.* 470, this court can not hold it to be cause for a new trial in a murder case that the judge, after charging: "The punishment for persons convicted of murder shall be death, but shall be confinement in the penitentiary for life if the jury trying the case shall so recommend. If you find the defendant guilty, it is in your discretion whether you will recommend that he be imprisoned for life. You are not limited or circumscribed, and the law provides no rule for guidance," added: "If you think this is a case in which you would be justified in recommending a life imprisonment in the event of your finding the defendant guilty, you have a right to make such recommendation, as it is for you to say, in the event of your finding the defendant guilty, whether the facts and circumstances in this case warrant you in making such recommendation. It is all a question for you under the law and the evidence." As an open question, however, some of the language above quoted would be subject to serious criticism. It would in such cases be decidedly better to omit the use of the word "justified" and of the word "warrant," and to substitute in their stead language leaving the jury free to dispose of the question of recommending or not recommending life imprisonment, without any intimation from the bench as to what should control or influence them in reaching a conclusion upon this matter.
3. Both the evidence and the statement of the accused demanded a verdict of guilty, and there was no error in denying a new trial.

Argued October 11,—Decided November 15, 1897.

Indictment for murder. Before Judge Candler. Fulton superior court. March term, 1897.

*C. L. Pettigrew* and *F. A. Quillian,* for plaintiff in error.

*J. M. Terrell,* attorney-general, and *C. D. Hill,* solicitor-general, contra.

Fish, J.   It appears from the record, that Annie Johnson, the deceased, was a married woman living apart from her husband.   The accused, Tom Cyrus, had been keeping her as his mistress for two years prior to the homicide.   In his statement he said, substantially, that on the night of the homicide he went home and found two men and the deceased, drinking beer, and he bade them good-night and walked out.   He went off and remained away thirty or forty minutes.   When he returned one of the men had gone.   He stood on the sidewalk and watched the man who remained and the deceased, through the window, for about twenty minutes, and saw them hugging and kissing.   He then went to the window and remained there about ten minutes, and while there saw them lie down on the bed.   He then went away again and stayed about thirty minutes— walking three blocks, and when he returned they were sitting on the side of the bed and remained there about three minutes and "got up and pulled at each other and kissed and went on."   Finally, when the man was ready to leave, the accused went out of the yard and stayed six or seven minutes. He then returned and went into the room where deceased was, and asked her, "What's the matter?   Why are you acting like this to-night?"   She said, "Acting how?"   He said, "Drinking beer to-night and hugging and kissing and going on. That's nice for a woman of your standing to carry on— for a woman to try to carry yourself.   I stood out in the street and saw everything, and anybody else passing could have seen. That is no conduct for you to carry on.   Haven't I for two years been slaving for you?   Haven't I give you everything that your heart could wish for, that you asked for?   Why do you want to treat me in any way like you treated me to-night? Have you any cause to do that?   Have I ever failed to give you anything you asked me for?   Tell me the reason; explain to me your conduct to-night."   She said nothing.   Finally the accused said, "You are not going to say anything to me?"   She said, "Well; you saw it, did you?"   The accused said, "Yes." She said, "What are you going to do; or what can you do about it?"   When she said that, the accused claims that he "lost all presence of mind whatsoever," and pulled his pistol

and shot her. He says that he did not shoot her with the intention of murdering her. The evidence shows that he shot her three times, mortally wounding her. The fourth ground of the motion for new trial was, that the court failed to charge the jury the law of manslaughter; and the fifth and six grounds were, that the court refused to give certain requests to charge upon the subject of voluntary manslaughter. We will deal with these three grounds first and together.

1. While it is true that if a husband suddenly comes upon his wife in the act of adultery, and, in a violent heat of passion aroused by such intense provocation, instantly takes her life, the homicide is voluntary manslaughter only, as the law, in compassion for human infirmity, extenuates an act suddenly committed under great impulse of passion justly aroused by adequate provocation, yet we are not aware of any instance where the humanity of the law has been so extended as to palliate in the slightest degree the killing by a man of his mistress for no other cause except that she, within his personal knowledge, had, shortly before the homicide, been guilty of lewd and lascivious acts with another man, and, upon being upbraided therefor, expressed no regret for her conduct. A homicide under such circumstances is murder, and the law of voluntary manslaughter has no application whatever to such a case. The law makes no allowance for the hot blood aroused by a man detecting his mistress in the act of sexual intercourse with another, as his relation to her is without the pale of the law, being of itself criminal. In order to reduce the homicide from murder to voluntary manslaughter, the provocation must be sufficient to *justify* the excitement of passion and to exclude all idea of deliberation or malice, either express or implied. The passion must be aroused by a *just* cause, such as would produce the same state of mind on the part of the slayer as would an unjustifiable assault, or attempt to commit a serious personal injury, upon him. If the accused took the life of his paramour solely because his passions were greatly aroused by seeing her lewd and lascivious conduct with another shortly before the homicide, and because when he reproached her for such conduct she expressed no regret, then he had, in a legal sense, no

"considerable provocation" for his act, but was moved to do it by an abandoned and malignant heart, and is guilty of murder. After a careful examination of the record, we are of the opinion that neither the evidence nor the statement of the accused itself, in any view of the case, warranted a verdict of voluntary manslaughter, and that the court below did not err in failing or refusing to charge the jury on that subject.

2. The second headnote sufficiently disposes of the seventh and eighth grounds of the motion for new trial.

3. As to the first, second and third grounds of the motion, that the verdict was contrary to the law and the evidence, both the evidence and the statement of the accused demanded, under the law applicable to the case, a verdict of guilty of murder; and there was no error in denying a new trial.

*Judgment affirmed. All the Justices concurring.*