## THE STATE OF NORTH DAKOTA v. JOE PELTIER.

(129 N. W. 451.)

**Criminal Law — Supreme Court — Instructions.**

1. In a criminal case before the supreme court only on errors assigned as to certain portions of the charge to the jury, and in which none of the evidence is brought into the record, the instructions complained of will only be considered to determine whether they are abstractly erroneous, or wrong under any view of the case.

**Criminal Law — Instructions — Presumption of Correctness.**

2. Instructions in such case are presumed to be correct if the record leaves any room for presumption.

**Criminal Law — Trial — Instructions — Respective Functions of Court and Jury.**

3. The legislature having limited the functions of the court in a criminal trial by providing in § 9985, Rev. Codes 1905, that the court must only instruct as to the law of the case and by § 10026, Rev. Codes 1905, made the jury the exclusive judges of all questions of fact in such actions, the judge must not invade the province of the jury by expressing his opinion on the facts, or by weighing the evidence, or by giving intimations as to the guilt of the accused.

**Criminal Law — Homicide — Fixing Penalty by Jury — Instructions — Duty of Court.**

4. By the provisions of § 8804, Rev. Codes 1905, the jury on finding the accused guilty of murder in the first degree, must designate in their verdict whether he shall be punished by death or by imprisonment for life. *Held*, that the only duty of the court with reference to the punishment in charging the jury is to inform the jury of the two methods of punishment, and that it is left to that body to determine which shall be inflicted.

**Criminal Law — Homicide — Fixing Penalty by Jury — Instructions — Duty of Court.**

5. An instruction in a criminal case which advises the jury of reasons for inflicting the death penalty is erroneous as an invasion of the rights of the ac-

cused to have the question of his life or death passed upon solely by the jury, and this is emphatically so when no reasons are given for imprisonment.

**Criminal Law — Instructions — Invading Province of Jury.**

6. The jury is the sole judge as to what considerations should be allowed weight in deciding between the penalty of death and that of life imprisonment, and it is reversible error for the court to attempt to control the discretion vested in the jury on this subject. *Held*, that the charge on the subject of the death penalty, set forth at length in the opinion, infringed on the right of the defendant to have the jury unadvised and uninfluenced by the court, pass upon the question of his life or death.

Opinion filed December 31, 1910.

Appeal from a judgment of the District Court of Bottineau county; *Goss*, J.

Joe Peltier was convicted of murder and he appeals.

Reversed, and new trial granted.

*T. R. Mockler*, for appellant.

It was error to take from the jury the question whether prisoner was guilty of manslaughter.    Brickwood & S. Instructions to Juries, § 4620; Lynn v. People, 170 Ill. 527, 48 N. E. 964; Panton v. People, 114 Ill. 505, 2 N. E. 411, 5 Am. Crim. Rep. 425.

Court cannot assume that a murder has been committed.    N. D. Code, § 9985; State v. Barry, 11 N. D. 428, 92 N. W. 809; Territory v. O'Hare, 1 N. D. 30, 44 N. W. 1003; State v. Dorland, 103 Iowa, 168, 72 N. W. 492; Russ v. The War Eagle, 9 Iowa, 374; Roach v. Parcell, 61 Iowa, 98, 15 N. W. 866; State v. Hartzell, 58 Iowa, 520, 12 N. W. 557.

*Andrew Miller*, Attorney General, *Alfred Zuger*, and *C. L. Young*, Assistants, for respondent.

Failure to instruct as to lesser grades is not error, where there is no proof of such minor offenses.    State v. Talbott, 73 Mo. 347; 1 Blashfield, Instructions to Juries, § 190.

Cautionary instructions against effect of sex, sympathy, age, public opinion, race prejudice, are proper.

Bingham v. Bernard, 36 Minn. 114, 30 N. W. 404; McTyier v. State, 91 Ga. 254, 18 S. E. 140; Lunsford v. Walker, 93 Ala. 36, 8 So. 386; Coyle v. Com. 100 Pa. 573, 45 Am. Rep. 397; Brantley v. State, 87 Ga. 149, 13 S. E. 257; Smith v. State, 4 Neb. 277; 11 Enc. Pl. & Pr. p. 371; State v. Talbott, 73 Mo. 347.

SPALDING, J. On July 22d, 1908, the defendant, Joe Peltier, was, by a jury, found guilty of the crime of murder in the first degree, and his punishment fixed by the verdict, as death. The information charged that the offense was committed in Bottineau county on the 21st day of June, 1908, by killing one F. W. Seidel.

A word of explanation of the delay in the presentation of this case is pertinent. The appellant was represented in the district court by counsel, who was shortly after the trial elected state's attorney of Bottineau county, and upon such election withdrew from the case. Difficulty was experienced by reason of the lack of means of the appellant in securing other counsel, but after he was incarcerated in the penitentiary, persons interested in his case secured the services of another attorney, who served a notice of appeal on the 28th day of June, 1909, but, before accomplishing anything in the way of perfecting the appeal, this attorney left the state permanently. Other counsel was then secured, who attempted to procure the settlement of a statement of the case, but failed, and as a result the appeal is before us on nothing but the judgment roll.

The judgment roll in this case was not transmitted to the clerk of this court until October 4, 1909, and it then contained no copy of the charge to the jury. The clerk of this court was informed by the clerk of the district court of Bottineau county, that he could not certify to the charge to the jury, as it was not in his office, and that after calling up all the attorneys of record in the case and the judge and reporter, he was unable to locate it. On the 31st day of October, 1910, it was still unlocated, and the clerk of that court wrote the clerk of this court that he held the receipt of the judge who presided at the trial, for the original charge, dated July 31, 1908, and that the judge said he would make another search and see if it could be found among his papers. December 2, 1910, a duly certified copy of the charge was received by the clerk of this court, which varies materially from what were supposed to be copies, but uncertified, used by the counsel for the respective parties in the preparation of their abstracts and briefs. It will thus be seen that this case has been presented in this court at the earliest possible date after the completion of the record. All the assignments of error before us relate to the charge to the jury.

When the evidence is not before the appellate court, it can only examine the instructions without regard to the evidence, and it will not re-

verse a case unless an instruction complained of is abstractly erroneous,. or wrong under any view of the case. Instructions are presumed to be: correct under the circumstances, and as applied to the evidence, if the record leaves any room for presumptions. Campbell v. Peterman, 56, Ind. 428; South & North Ala. R. Co. v. Brown, 53 Ala. 651; 1 Blash-field, Instructions to Juries, § 375; Haggarty v. Strong, 10 S. D. 585,. 74 N. W. 1037.

The legislature has seen fit to limit the functions of the court and those of the jury in criminal actions. They are distinct and separate.. In charging the jury, the court must only instruct as to the law of the case (Rev. Codes 1905, § 9985), and the jury are the exclusive judges of all questions of fact (Rev. Codes 1905, § 10026), and the judge, in. instructing the jury, must not invade the province of that arm of the court by expressing an opinion upon the facts, or giving intimations as to the guilt of the defendant, neither must he directly or indirectly weigh the evidence or any part of it. This interpretation of the sec-- tions cited was announced in Territory v. O'Hare, 1 N. D. 30, 44 N.. W. 1003, and it was adhered to in State v. Barry, 11 N. D. 428, 92 N.. W. 809, in a most carefully prepared and elaborate opinion, wherein numerous authorities were cited, and the distinction between the law on this subject in this state and the common law, and that of certain other states, was shown. Further discussion of this question is unnecessary in this opinion.

Error is assigned as to several paragraphs in the charge, as violating these provisions of the Code. While the language of these paragraphs is somewhat obscure and involved, and we have collectively and individ-- ually spent much time in considering them in attempting to determine their meaning, and while we are satisfied that they approach dangerous- ly near the line of infringement, yet we do not feel justified in holding that they cross it and constitute reversible error. We do not set them out, for lack of time to fully discuss them, and because it would serve no- useful purpose to do so, and we do not wish to lend our sanction to them and thereby invite their use by other courts in other trials. We pass, them with these observations.

The defendant was convicted of murder in the first degree, and the penalty imposed by the verdict and judgment of the court was death. The legislative assembly has, by way of compromise with the opponents.

of the death penalty, or for other reasons, provided by § 8804, Rev. Codes 1905, that "the jury before whom any person prosecuted for murder is tried shall, if they find such person guilty thereof, fix and determine by their verdict the punishment to be inflicted within limits prescribed by law, as, for example: If they find such person guilty of murder in the first degree they must designate, in their verdict, whether he shall be punished by death or imprisonment in the penitentiary for life; or if they find such person guilty of murder in the second degree, they must designate in their verdict the term of his imprisonment in the penitentiary, not less than ten and not exceeding thirty years." By this provision it was left to the jury in case of conviction of murder in the first degree, to fix the penalty, and it was left to the jury to do this by the exercise of its own discretion. The legislature has not required any reasons to be given for the penalty imposed, and does not empower the trial judge to indicate in any manner to the jury the penalty which it should fix, other than that the court shall inform the jury of the two methods of punishment, and that it is left to it to determine which shall be inflicted. When the court advises the jury as to grounds or reasons for inflicting the death penalty, or life imprisonment, he invades the province of the jury, and particularly so when he only instructs them as to the reasons for inflicting the extreme penalty; and such error is fatal.

A brief review of the authorities on this question is sufficient. In 1897 the Congress of the United States enacted a law providing that in all cases in which the accused is found guilty of the crime of murder under § 5339 of the Revised Statutes, U. S. Comp. Stat. 1901, p. 3627, the jury may qualify their verdict by adding thereto, "without capital punishment," and that whenever the jury shall return a verdict qualified as aforesaid, the person convicted shall be sentenced to imprisonment at hard labor for life. (29 Stat. at L. 487, chap. 29, U. S. Comp. Stat. 1901, p. 3620.) It will be seen that this provision is identical in effect with § 8804, supra. Three persons were convicted of murder in the first degree, in the District of Columbia, and each was sentenced to death. Their cases went to the Supreme Court of the United States on error assigned as to the instructions of the trial court on this statute, and are reported as Winston v. United States, 172 U. S. 303, 43 L. ed. 456, 19 Sup. Ct. Rep. 212. The instructions complained of advised

the jury as to reasons which would be proper to move the jury to append the qualifications referred to, to its verdict. The instructions differed somewhat in each of the three cases, but the principle involved in each case was the same, namely, that of giving the jury reasons for imposing the death penalty or qualifying their verdict by the words, "without capital punishment." Mr. Justice Gray wrote the opinion, in which all three cases were reversed for this error. He uses this clear and emphatic language.

"The difficulty of laying down exact and satisfactory definitions of degrees in the crime of murder, applicable to all possible circumstances, has led other legislatures to prefer the more simple and flexible rule of conferring upon the jury, in every case of murder, the right of deciding whether it shall be punished by death or by imprisonment. This method has been followed by Congress in the act of 1897.

"The act of Congress confers this right upon the jury in broad and unlimited terms, by enacting that 'in all cases in which the accused is found guilty of the crime of murder,' 'the jury may qualify their verdict by adding thereto, 'without capital punishment,' and that, 'whenever the jury shall return a verdict qualified as aforesaid,' the sentence shall be to imprisonment at hard labor for life.

"The right to qualify a verdict of guilty, by adding the words, 'without capital punishment,' is thus conferred upon the jury in all cases of murder. The act does not itself prescribe, nor authorize the court to prescribe, any rule defining or circumscribing the exercise of this right; but commits the whole matter of its exercise to the judgment and consciences of the jury. The authority of the jury to decide that the accused shall not be punished capitally is not limited to cases in which the court, or the jury, is of the opinion that there are palliating or mitigating circumstances. But it extends to every case in which, upon a view of the whole evidence, the jury is of opinion that it would not be just or wise to impose capital punishment. How far considerations of age, sex, ignorance, illness, or intoxication, of human passion or weakness, of sympathy or clemency, or the irrevocableness of an executed sentence of death, or an apprehension that explanatory facts may exist which have not been brought to light, or any other consideration whatever, should be allowed weight in deciding the question whether the accused should or should not be capitally punished, is committed by the

21 N. D.—13.

act of Congress to the sound discretion of the jury, and of the jury alone.

"The decisions in the highest courts of the several states under similar statutes are not entirely harmonious, but the general current of opinion appears to be in accord with our conclusion. State v. Shields, 11 La. Ann. 395; State v. Melvin, 11 La. Ann. 535; Hill v. State, 72 Ga. 131; Cyrus v. State, 102 Ga. 616, 29 S. E. 917; Walton v. State, 57 Miss. 533; Spain v. State, 59 Miss. 19; People v. Bawden, 90 Cal. 195, 27 Pac. 204; People v. Kamaunu, 110 Cal. 609, 42 Pac. 1090.

"The instructions of the judge to the jury, in each of the three cases now before this court, clearly gave the jury to understand that the act of Congress did not intend or authorize the jury to qualify their verdict by the addition of the words, 'without capital punishment,' unless mitigating or palliating circumstances were proved.

"This court is of the opinion that these instructions were erroneous in matter of law, as undertaking to control the discretionary power vested by Congress in the jury, and as attributing to Congress an intention unwarranted either by the express words or by the apparent purpose of the statutes."

In United States v. Williams, 103 Fed. 938, Judge Boarman, in an opinion on a motion for a new trial, considered the same Federal statute, and held that the charge given, as it might have had the effect of limiting the power vested in the jury to determine absolutely the penalty to be imposed on conviction of murder in the first degree within the limits of the statute referred to, constituted reversible error.

In People v. Bawden, 90 Cal. 195, 27 Pac. 204, the court considered instructions which substantially told the jury that if they found defendant guilty of murder in the first degree, and also found some extenuating fact or circumstance, it was within their discretion to relieve him from the extreme penalty of death by affixing the penalty at imprisonment for life, but that if the evidence did not show such extenuating circumstances then they should allow the death penalty to be imposed. This instruction was under § 190 of the Penal Code of California, which is in effect the same as § 8804, supra. That court held that in view of its prior decisions it would not hold such instruction reversible error, and declined to reopen the question, but remarked that they hoped trial courts would not make further excursions into this doubtful domain, and

if the question presented were a new one, there would be strong reasons for holding that, under § 190, the legislature intended to give the jury the entire power of fixing punishment in such case, uninfluenced by the court.

In People v. Leary, 105 Cal. 486, 39 Pac. 24, that court says: "Whatever may have been the actuating consideration in the minds of the legislature in enacting § 190, whether because they believed there are instances of murder falling within the definition of murder of the first degree, which, because characterized by a less degree of atrocity or other mitigating circumstances, call for a milder punishment than that of death, or whether their reason was something else, the fact remains that they have confided the power to affix the punishment within these two alternatives, to the. absolute discretion of the jury, with no power reserved to the court to review their action in that respect."

In People v. Kamaunu, 110 Cal. 609, 42 Pac. 1090, the court held that this discretion is given to the jury, and that the court cannot direct or advise them upon the subject, further than to inform them of their functions.

In People v. Ross, 134 Cal. 256, 66 Pac. 229, the court holds that the discretion which is given to the jury by § 190 of the Penal Code, in determining whether a person they find guilty of murder in the first degree shall suffer death or imprisonment in the state's prison for life, is a discretion to be exercised upon the jury's own consideration of the evidence, and without any instruction from the court as to the grounds or reasons for the mode in which they shall exercise it, and remarks, that "it has never been held that it would be proper for the court to attempt to control the exercise of this discretion by presenting them reasons for exercising it in one mode rather than in another."

In Georgia a statute provides that the punishment for persons convicted of murder shall be death, but shall be confinement in the penitentiary for life if the jury trying the case shall so recommend. The trial court instructed a jury that, if it found the defendant guilty, it was entirely within its discretion whether it would recommend that he be imprisoned for life, and said: "You are not limited or circumscribed. . . . If you think this is a case in which you would be justified in recommending life imprisonment in the event of your finding the defendant guilty, you have a right to make such recommendation as it is for you

to say, in the event of your finding the defendant guilty, whether the facts and circumstances in this case warrant you in making such recommendation.     It is all a question for you under the law and the evidence."

The supreme court held that as an open question some of the language above quoted would be subject to serious criticism, and that it would be decidedly better to omit the use of the word "justified," and of the word "warrant," and to substitute language leaving the jury free to dispose of the question of recommending or not recommending life imprisonment, without any intimation from the bench as to what should control or influence them in reaching a conclusion upon such matter. Cyrus v. State, 102 Ga. 616, 29 S. E. 917.

In Hill v. State, 72 Ga. 131, it was held that a charge that the jury, in considering the question of recommending to mercy, should not be governed by their sympathies, but by their judgment approved by the evidence in the case and the law applicable to it, was error.     This was on the same statute referred to in Cyrus v. State, supra.

We think these authorities are ample to sustain the principle which we have announced.     We will now consider whether the portion of the charge referred to in the eighth assignment of error is in conflict with this principle.     The charge of the court embraced over thirty typewritten pages, and, after apparently completing it, certain additions were made, and the last paragraph of the charge is the one referred to in the eighth assignment.     It is the one by reason of its location with reference to the whole charge that must have been most emphatically impressed upon the minds of the jurors.     It reads:

"So that in this case, gentlemen of the jury, should you find the defendants guilty of crime, it is for you to exercise your sound judgment in fixing the punishment to be imposed by the court, as the court is bound by your verdict as to the punishment it must impose, if you find the defendants or either of them guilty.     In any event, do your duty fearlessly and conscientiously.     Should you find the defendants, or either of them, guilty of the crime of murder in the first degree, you will, in fixing the punishment, bear in mind the reason for the prescribed punishment.     You should, in such case, consider all the circumstances in the case and as disclosed by the evidence, and if you determine that there is an entire absence of extenuating circumstances in the commis-

sion of said crime of murder in the first degree, and in the manner of the commission thereof, and that said crime is atrocious and cold-blooded, and the interests of society, government, and law and order demand the extreme penalty, you should not shrink from imposing it. Do your duty as you may see it, having careful regard to your oaths as jurors and your conscientious convictions under the evidence, and the court's instructions, and do as your cool dispassionate judgment directs that it should be done, and in so doing you will do your duty as jurors in this case and as American citizens as well."

After giving these instructions long and careful consideration, this court is unanimous in the opinion that it in effect instructs the jury as to the grounds for inflicting the extreme or death penalty, and strongly intimates to the jury the opinion of the court that that penalty should be inflicted and that they should so find in their verdict.

It also comes within the prescribed rule of some of the authorities which we have cited, in presenting to the jury reasons for exercising its discretion in one mode rather than in another. People v. Ross, supra. It clearly advised the jury as to reasons for inflicting the penalty of death.

It comes very near informing the jury that the evidence showed that atrocious and cold-blooded murder had been committed. The opinion of the court as to the penalty to be prescribed by the jury may be somewhat concealed by the form of the expressions employed, but we think it was none the less apparent to the jury that the court expected them to return a verdict imposing the death penalty, and that by the language used, as well as the form of this paragraph of the charge, the right of the defendant to have the jury exercise its untrammeled, uninstructed, and uninfluenced discretion as to the penalty, was invaded.

In this state the trial courts do not possess the arbitrary power that is in some measure conferred upon and exercised by the Federal courts, much less are they given the wide range of influence on the trial of a case that obtains in the trial courts of England. In those courts the functions of the court and of the jury are not so clearly defined or so carefully separated as here, and we are aware that such courts frequently comment on the weight of the evidence, and express opinions as to the credibility of witnesses, and in other methods may influence the jury, but these methods have been discarded, in this state at least, and

the right of trial by jury, uninfluenced by the dignified persuasion of the bench, is carefully protected as to all questions of fact, or subjects like the penalty for murder, which are left to the discretion of the jury.

This court is not oblivious to the fact that an expensive trial would doubtless be obviated by an affirmance of this judgment, neither is it oblivious to the rights of society to protection, but we should be derelict in our duty if we overlooked one of the supreme rights of an American to be convicted of crime only in a legal manner and by lawful methods, and to have the facts passed upon by a jury. Trial courts, of necessity, must be extremely cautious in preserving an impartial attitude in the trial of cases. The accused has the same right to have the jury pass unadvised upon the question of his life or death that he has on the facts going to his guilt or innocence.

All lawyers of experience know that jurors are constantly watching the judge for some intimation by words or gesture, or by look, as to his opinion on the merits of the case in which they are sitting. The error in the instruction set out in assignment 8 is fatal to this judgment.

We think it advisable to add that the instructions to the jury in this case, taken as a whole, aside from those referred to on assignment 8, while presenting nothing very tangible, must have impressed the jury that, in the opinion of the court, the defendant had committed the crime of murder in the first degree without any mitigating or extenuating circumstances.

The judgment entered in the court below is set aside, and a new trial awarded to the defendant. All concur.