Wanamaker, J.
One Carl Fischer was being examined as to his qualifications as a juror. The following questions and answers appear from the record:
By Mr. Ratliff, attorney for defendant.
“Q. Mr. Fischer, in a case of murder in the first degree, would you be opposed to the consideration of the extension of mercy to a man who you felt was guilty of so great a crime? A. Yes sir.
“Q. You would be opposed to it? A. Yes sir.
“Q. So that if you were of the firm conviction and were convinced beyond all reasonable doubt that a man was guilty of murder in the first degree, you would not be willing to consider the extension of mercy? A. No sir.”
By the Court.
“If the law provided that you should consider mercy, would you feel so set in your opinion that you would bring in a verdict without recommendation of mercy, without even considering mercy? A. I don’t think I could consider it fairly, Your *23 Honor, no, because of my theory, an eye for an eye.”
By Mr. Ross, attorney for the state.
“Q. I am not asking you whether you would vote for the death penalty. He merely asked you, whether under the instructions of the Court, along with the other instructions he will give you, whether you could take this matter up under consideration, or whether you would bottle yourself up and say, ‘No I won’t consider it at all’? A. First degree murder is a chair with me. If I am sure he is guilty, first degree, that is a chair.
“Q. You don’t think you could consider the question of mercy at all? A. No sir, not if I felt sure it was first degree murder.”
The counsel for the defendant, Reuben Ellis, submitted a challenge for cause and the court sustained the challenge and excused Mr. Fischer.
The counsel for the state took proper exceptions to the ruling of the court.
It is urged that the foregoing voir dire examination, the challenge of counsel, and the allowance of that challenge, to which the prosecutor excepted, are justified by virtue of Section 12400, General Code, which reads:
“Whoever, purposely, and either of deliberate and premeditated malice, or by means of poison, or in perpetrating or attempting to perpetrate rape, arson, robbery or burglary, kills another is guilty of murder in the first degree and shall be punished by death unless the jury trying the accused recommend mercy, in which case the punishment shall be imprisonment in the penitentiary during life.”
*24 This provision authorizing the jury to recommend mercy, whereupon the court shall impose only life imprisonment, is the result of an amendment made by the general assembly of Ohio in 1898, as found in 93 Ohio Laws, 223.
No case in Ohio seems to have considered fundamentally the legal- practice and judicial limit on a voir dire of veniremen preliminary to challenge in criminal cases. In other states the practice is not uniform. In some, counsel for the prisoner and the state are given wide latitude, and are almost free from control by the court in the preliminary questions. In others, the trial judge takes charge of the preliminary examination, takes it to the point of qualifying the jury, challenging for cause, and after he has completed this examination turns the veniremen over, first, to counsel for the state, and then to counsel for the defense, for further inquiry, if any; but such inquiry is limited to new matter and not merely to repetition of the inquiry of .the trial judge.
The latter practice has much to commend it in the saving of time and in the avoiding of any unpleasantness and irritation between counsel and the veniremen,, the latter often objecting to the vigorous cross-examination by persistent counsel, ofttimes impugning their sense of fairness and impartiality.
When we remember how in some jurisdictions days and weeks are consumed in qualifying the twelve men in the jury box for the trial of some murder case, the importance of keeping the voir dire examination within proper limits is most manifest. Our statute providing for challenge in *25 criminal cases, Section 13653, General Code, is as follows:
“The following shall be good cause for challenging a person called as a juror on an indictment:
“First. That he was a member of the grand jury which found such indictment;
“Second. That he has formed or expressed an opinion as to the guilt or innocence of the accused; but if a juror has formed or expressed such opinion, the court shall thereupon examine such juror on oath as to the grounds thereof, and if such juror says that he believes he can render an impartial verdict notwithstanding such opinion, and the court is satisfied that such juror will render an impartial verdict on the evidence, the court may admit him as competent to serve as a juror in such case;
“Third. In indictments for a capital offense, that his opinions preclude him from finding the accused guilty of an offense punishable with death;
“Fourth. That he is related within the fifth degree to the person alleged to be injured, or attempted to be injured by the offense charged, or to the person on whose complaint the prosecution was instituted, or to the defendant;
“Fifth. That he served on a petit jury drawn in the same cause against the same defendant, and such jury was discharged after hearing the evidence, or rendered a verdict thereon which was set aside;
“Sixth. That he served as a juror in a civil case brought against the defendant for the same act;
“Seventh. That he has been subpoenaed in good faith as a witness in the case;
*26 “Eighth. That he is an habitual drunkard;
“Ninth. Like challenges shall be allowed in criminal prosecutions as are allowed in civil cases.”
The last provision reads into the criminal statute the civil statutes pertaining to challenges, which in turn become important. They are as follows:
“Sec. 11437. The following shall be good causes for challenge to any person called as a juror for the trial of any cause:
“1. That he has been convicted of a crime which by law renders him disqualified to serve on a jury;
“2. That he has an interest in the cause;
“3. That he has an action pending between him and either party;
“4. That he formerly was juror in the same cause ;
“5. That he is the employer, employe, counsellor, agent, steward, or attorney of either party;
“6. That he is subpoenaed in good faith as a witness in the cause;
“7. That he is akin by consanguinity or affinity within the fourth degree, to either party, or to his attorney;
“8. That he is a party to another action then pending in any court, in which an attorney in the cause then on trial is an attorney, either for or against him;
“9. That he, not being a regular juror of the term, has served once already as a talesman in the trial of any cause, in any court of record in the county within the preceding twelve months; and in any of such cases each shall be considered as a *27 principal challenge, and its validity tried by the court.”
“Sec. 11438. Any petit juror may be challenged also on suspicion of prejudice against, or partiality for either party, or for want of a competent knowledge of the English language, or other cause that may render him at the time an unsuitable juror. The validity of such challenge shall be determined by the court, and be sustained if the court has any doubt as to the juror’s being entirely unbiased.”
It is significant that upon amendment of the homicide statute in 1898 there was no change made in the provisions as to the grounds for challenge of jurors.
The right of trial by jury, particularly in criminal cases, is generally conceded to be a part of the English system of jurisprudence. Its earliest origin is unknown, but its substantial recognition, even by royalty, is recorded in Magna Charta, where the right was guaranteed in the famous document from King John of England in 1215. This charter has been generally recognized as the bulwark of English liberties.
The special provision of the charter applying to the right of trial by jury follows:
“No freeman shall be hurt in either his person or property, unless by lawful judgment of his peers or equals, or by the laws of the land.”
Originally the jurors were selected from the vicinage or neighborhood, because of the superior knowledge of such a jury concerning the defendant personally and the facts touching his guilt or in *28 nocence; in short, the knowledge of the neighbor was presumed to qualify him to try the question of the guilt or innocence of the accused. Intelligence was at a premium. Years of practice have thrown the pendulum to the other end of the arc and in too many jurisdictions the test of jurymen to-day is not intelligence but ignorance. The primary question too often is, how can we find twelve men who are wholly ignorant of the alleged transaction and of the defendant?
The oath of the juror is to “well and truly try and true deliverance make between the state of Ohio and the prisoner at the bar.” All of above grounds, severally and collectively, are primarily designed to secure for the state, no less than the prisoner at the bar, a fair and impartial jury.
What is the jury to try? Manifestly the issues raised by the indictment; that is, the guilt of the prisoner as therein charged. The entire voir dire examination should be directed exclusively to the question whether from any cause "the juror has a bias of mind in favor of or against either party that would interfere with his impartial and full consideration between them as to the guilt of the accused as charged.
Now, when that guilt is determined, and in this case it was found by the jury to be murder in the first degree, it then becomes the duty of the jury to determine the penalty. If they recommend mercy, the court is obliged by the statute to impose life imprisonment. If they fail to recommend mercy, the court must impose the death penalty. Manifestly this is all subsequent to the determina *29 tion of the guilt or innocence of the accused. It has nothing whatsoever to do with the qualifications of the jurors to impartially try the accused.
Clearly the foregoing examination of the venireman in the instant case discloses simply this, thát his views touching murder in the first degree clearly established beyond a reasonable doubt that in such case he would not recommend-mercy. It will not do to say that he would not consider the recommendation, because the very fact that he rejected such recommendation presupposes consideration.
Upon what theory of qualification of jurors should such answers disqualify the venireman ?
It is a well-settled rule, under the statutes where the jury have nothing whatsoever to do with the penalty attendant upon their rendition of a verdict of guilty, that prejudice against crime does not disqualify the jury. Indeed, it is high time for courts to say that prejudice against crime should be a qualification for jury service. Would it be urged that a man who had no prejudice against crime was even a good citizen; to say nothing of a good juror? The criminal or qwaN-criminal is the only individual known to the law who has no prejudice against crime. Hence he is the criminal. If prejudice against crime disqualifies one from being a competent and impartial juror, then the only persons qualified for such jury service are of the criminal or quasi-criminal class.
The authorities, however, are uniformly settled that no matter what the degree or extent of the prejudice against crime, the prejudice will not dis *30 qualify the juror so long as it is not against the prisoner personally; for he, indeed, in fact and in law, is presumed to be innocent.
One of the most ably and fully considered cases upon this question has become known as “The Anarchists’ Case of Chicago,” Spies et al. v. People, 12 N. E. Rep., 865, 867 (122 Ill., 1, 263), where it is held:
“A prejudice against * * * anarchists is nothing more than a prejudice against crime, which would not force a jury to prejudge an innocent and honest man, and would not, therefore, disqualify a juror.”
To the same effect is Leach v. State, 99 Tenn., 584, where it is held:
“That a juror had expressed the opinion that any man who waylays and kills another ought to be hung, does not disqualify him to try a case of murder committed by waylaying, as to the particular facts of which he has no opinion, or means of forming an opinion.”
Also to the same effect is Cooper v. State, 162 S. W. Rep., 364 (72 Tex. Cr., 266), where it is held:
“Where jurors stated on their voir dire that they had not formed any conclusion as to defendant’s guilt or innocence, but that they had a prejudice against the crime with which accused was charged, they were not disqualified.”
More directly in point is State v. Thorne, 39 Utah, 208. The judge rendering the opinion, at page 219, makes this observation:
“It needs no argument to show that the court undertook to guide and direct the jury in the de *31 termination and exercise of a discretion which the law conferred on them in terms unlimited and unprescribed. May the court do that ? We think not. Says Mr. Wharton in his w'ork on Homicide (3d Ed.), section 66: ‘The functions of the court are best performed under such provisions’ — permitting the jury to make a recommendation in respect of the punishment —‘by simply giving the terms of the statute to the jury, and informing them that the making or withholding of the recommendation is a matter entirely within’ their discretion. Mr. Justice Temple, in the case of People v. Kamaunu, 110 Cal. 609, 42 Pac. 1090, said: ‘This discretion is given to the jury, and the court cannot direct or advise them upon the subject further than to inform them of their function.’ ” (Citing Cyrus v. State, 102 Ga., 616, 29 S. E. Rep., 917, as sustaining this doctrine.)
But in the Thorne case the conclusion of the whole matter is stated, as follows:
“It undoubtedly is the law, that the jury, in the event they found the prisoner guilty of murder in the first degree, had the absolute right to recommend a punishment of life imprisonment, and that the making or withholding the recommendation was a matter entirely within their discretion to be exercised in any manner and for any reason they saw fit, and that they ‘should be left free to dispose of the question without any intimation of the court as to what should control or influence them in reaching a conclusion upon it.’ ”
It might be urged that because the state may inquire as to prejudice against capital punishment, *32 that, therefore, the defendant should likewise inquire as to any prejudice against recommending mercy. But the statute determines this question by providing that the prejudice against capital punishment is a specific ground of challenge; and the statute does not make any such provision with reference to a recommendation of mercy.
Again there is other sound ground for such distinction. A juror, if he have a prejudice against capital punishment, may refuse to find the prisoner guilty of murder in the first degree because such finding might subject him to such penalty unless the jurors recommend mercy. A juror might, if that prejudice were strong enough, refuse to concur in a first degree verdict, notwithstanding the evidence clearly showed to a moral certainty the guilt of the accused.
Independent of the statute, however, prejudice against capital punishment has been generally recognized as a ground for challenge, and with almost equal uniformity the question of recommendation of merey has in no wise been recognized as a ground for challenge.
The decisions of course are quite uniform that the trial judge may not advise or direct the jury touching a recommendation of mercy; and, if the judge may not do so, why should counsel be permitted to commit the jurymen in advance, either one way or the other, touching such recommendation ? The jury should be left entirely free to consider that question áfter they have agreed upon a verdict of murder in the first degree.
*33 There is already too large a latitude allowed in this voir dire examination. To open the door still wider to this preliminary question touching recommendation of mercy would permit an almost interminable line of hypothetical questions as to what would constitute such a case in the judgment of the juror, for instance, whether if there were mitigating circumstances of one kind or another kind he would be favorably inclined thereto, all with a view of committing the juror one way or the other before he has even heard the evidence in the court.
The question touching the venireman’s view as to murder in the first degree was improperly asked, and the objection to its asking should have been sustained. The challenge to the venireman was improperly sustained and the exceptions of the prosecuting attorney thereto are now sustained.

Exceptions sustained.

Nichols, C. J., Newman and Matthias, JJ., concur.